```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE        *    MDL Docket No. 2004
                                      4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
                                      Case Nos.
LIABILITY LITIGATION             *    4:12-cv-251 (Sass)
_____
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Patricia Lynne Sass was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Sass brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Sass also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on Sass's claims, contending that they are time-barred. For the reasons set forth below, Mentor's summary judgment motion (ECF No. 43 in 4:12-cv-251) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Patricia Lynne Sass sought treatment from Dr. William Kutsche for stress urinary incontinence.  Dr. Kutsche recommended an ObTape implant.  Dr. Kutsche implanted Sass with ObTape on January 21, 2005.  In May 2005, Sass returned to Dr. Kutsche complaining of dyspareunia and yellowish brown vaginal discharge.  Dr. Kutsche observed that Sass's incision had opened.  He told Sass that her incision was open, that she had an infection, and that a portion of her ObTape needed to be removed.  Sass Dep. 70:5-14, ECF No. 43-4 in 4:12-cv-251.  Dr. Kutsche removed a three-inch portion of Sass's ObTape on May 9, 2005.  Dr. Kutsche performed another revision in June 2005.

Sass continued to experience vaginal bleeding, and Dr. Kutsche referred her to Dr. Andrew Agosta.  In September 2005, Dr. Agosta diagnosed Sass with a localized abscess over her ObTape incision.  Given the location of the abscess, Dr. Agosta

believed that it was caused by the ObTape. In December 2005, Sass had another abscess in the same area. Dr. Agosta again concluded that it was caused by the ObTape.

Sass was a Kentucky resident when she filed her complaint, but all of her ObTape-related treatment took place in Michigan. She filed her action in this Court pursuant to the Court's direct filing order on September 20, 2012, asserting claims for negligence, strict liability - design defect, strict liability – manufacturing defect, strict liability – failure to warn, breach of implied warranties, breach of express warranties, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.

## DISCUSSION

Sass filed her action in this Court under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Sass was a Kentucky resident when she filed her complaint, and the parties agree that Kentucky's choice-of-law analysis applies to her claims. The parties also agree that Sass's claims arose in Michigan, where all of her ObTape-related treatment took place. *See Abel v. Austin*, 411

3

S.W.2d 728, 736-37 (Ky. 2013) (finding that fraud cause of action arose where plaintiffs lived and were injured).

Under Kentucky law, when a cause of action arises in another state, Kentucky's limitation period applies unless the other state's limitation period is shorter. Ky. Rev. Stat. Ann. § 413.320. Michigan has a three-year statute of limitations for product liability actions, Mich. Comp. Laws Ann. § 600.5805(13), and "it applies irrespective of how plaintiff proceeded to seek such recovery." *State Mut. Cyclone Ins. Co. v. O & A Elec. Co-op.*, 161 N.W.2d 573, 576 (Mich. 1968). Kentucky has a one-year statute of limitations for personal injury claims, a four-year statute of limitations for breach of warranty claims, and a five-year statute of limitations for fraud claims. Ky. Rev. Stat. Ann. §§ 413.140(1)(A), 355.2-725(1), 413.120(11).

Thus, the parties agree that under Kentucky's borrowing statute, Kentucky's one-year statute of limitations applies to Sass's strict liability and negligence claims. They also agree that Michigan's three-year statute of limitations applies to Sass's breach of warranty and fraud claims. Mentor contends that all of Sass's claims are time-barred.

**I. Sass's Strict Liability and Negligence Claims**

Kentucky has a one-year statute of limitations for personal injury claims. Ky. Rev. Stat. Ann. § 413.140(1)(A). A personal injury claim does not "accrue until the plaintiff discovers (or

4

in the exercise of reasonable diligence should have discovered) not only that he has been injured, but also that this injury may have been caused by the defendant's conduct." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010); *accord Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 819 (Ky. 1991). "In the products liability context, a potential plaintiff's awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on the plaintiff the duty to discover the responsible parties." *Reese v. Gen. Am. Door Co.*, 6 S.W.3d 380, 383 (Ky. Ct. App. 1998); *accord Fluke Corp.*, 306 S.W.3d at 61. In *Fluke Corp.*, for example, three electrical contractors were injured by an explosion that occurred when they were working on a breaker that their voltage meter showed had no electricity flowing to it even though there was. Even though the contractors "had not previously heard of voltage meters malfunctioning," "they should have reasonably suspected that the voltage meter was not working properly and investigated this possibility." *Fluke Corp.*, 306 S.W.3d at 61.

Here, Sass contends that she did not learn of a connection between ObTape and her injuries until 2011 when a friend told her about a television commercial regarding mesh complications. But Sass knew or should have known that she suffered some injuries related to ObTape well before then. By December 2005, Sass had undergone two ObTape revision surgeries and had been

5

treated for two abscesses that her doctor believed were caused by the ObTape.  Sass presented no evidence that her doctors told her that her injuries were *not* connected to ObTape.  So, by December 2005, Sass had enough information to know of a connection between ObTape and at least some of her injuries.  A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem.  Sass appears to argue that she had no reason to investigate her potential claims because her doctors never told her there was a defect in ObTape.  But that is not the standard.  Sass reasonably should have suspected a connection between ObTape and her injuries, so she had a duty to investigate.  She did not, so the discovery rule does not save her claims.

Sass argues that even if the discovery rule does not save her strict liability and negligence claims, fraudulent concealment should toll the statute of limitations.  Under Kentucky law, a statute of limitations may be tolled if the defendant engages in "conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so."  *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009) (quoting *Adams v. Ison*, 249 S.W.2d 791, 792 (Ky. 1952)).  In *Emberton*, for example, a

6

restaurant patron sued a restaurant after he contracted hepatitis A from a server with questionable handwashing practices. During the health department's investigation of the patron's hepatitis A exposure, the restaurant's manager embarked on a "comprehensive and systematic suppression" of the fact that the server had hepatitis A and that other employees had witnessed the server's lack of appropriate hygiene. *Id.* at 575. The Kentucky Supreme Court found that the statute was tolled until the patron found out that thirteen cases of hepatitis A had been traced to the restaurant. *Id.* The Kentucky Supreme Court emphasized that the patron could not have discovered the source of his hepatitis A infection through reasonable diligence. *Id.*

Here, Sass argues that Mentor had a duty to disclose the true risks of ObTape to her physician before he implanted her with it. She asserts that Mentor concealed the true risks of ObTape and that her physician would not have implanted it had he known its true risks. She does not appear to contend that Mentor did something after she was implanted with ObTape to conceal her potential claims. The rationale of *Emberton* thus does not apply. Moreover, the Kentucky Supreme Court rejected an argument similar to Sass's that the statute of limitations does not start to run "unless the product manufacturer has issued a recall or otherwise publicly disclosed defects." *Fluke*

7

*Corp.*, 306 S.W.3d at 63. The Kentucky Supreme Court emphasized that "plaintiffs have a duty to inquire into the safety of products where it is apparent from the facts that the product may have been a potential cause of an injury." *Id.* at 64.

As discussed above, Sass had enough information to know of a connection between ObTape and at least some of her injuries by December 2005, if not before. But Sass pointed to no evidence that she took any action to investigate her potential claims even though she knew (or had enough information to know) there was a connection between her injuries and the ObTape. She also did not point to evidence that she could not have discovered enough facts to support her claims had she started investigating the connection between ObTape and her injuries within a reasonable time after she discovered the connection. For all of these reasons, the statute of limitations for Sass's tort claims accrued in December 2005. Sass did not file her action until nearly seven years later, so her strict liability and negligence claims are time-barred.

**II. Sass's Warranty and Fraud Claims**

Michigan's statute of limitations for product liability actions, regardless of the plaintiff's theory of the case, is three years. Mich. Comp. Laws Ann. § 600.5805(13). Under Michigan law, a claim accrues at "the time the wrong upon which the claim is based was done regardless of the time when damage

8

results." Mich. Comp. Laws Ann. § 600.5827. Michigan does not have a common-law discovery rule. *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 680 (Mich. 2007). "The time of the wrong trigger[s] the limitations period, and that date [is] the date on which plaintiff was harmed by the defendant's act." *Smith v. Stryker Corp.*, No. 294916, 2011 WL 445646, at *1 (Mich. Ct. App. Feb. 8, 2011). Here, Sass was harmed in May 2005, when her doctor had to remove a portion of her ObTape. Thus, under Michigan law her warranty and fraud claims accrued in May 2005.

Michigan has a statute that tolls the limitations period due to fraudulent concealment. Mich. Comp. Laws Ann. § 600.5855. Sass contends that it applies here. As discussed above, Sass's argument focuses on her assertion that Mentor concealed the true risks of ObTape and that her physician would not have implanted it had he known its true risks. She does not appear to contend that Mentor did something after she was implanted with ObTape to conceal her potential claims. Furthermore, like Kentucky, Michigan requires a plaintiff to exercise due diligence to investigate her potential claims. *E.g. Younce v. JP Morgan Chase Bank N.A.*, No. 323242, 2015 WL 7571908, at *4 (Mich. Ct. App. Nov. 24, 2015) (concluding that § 600.5855 did not apply to a case where the plaintiffs could have discovered their claims if they had investigated them). For the same reasons discussed above with regard to Sass's

fraudulent concealment argument under Kentucky law, the Court finds that Michigan's fraudulent concealment statute does not toll the statute of limitations for Sass.  She did not file her action until more than seven years after her fraud and warranty claims accrued, so those claims are time-barred.

## CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 43 in 4:12-cv-251) is granted.

IT IS SO ORDERED, this 4th day of March, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
